UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORINNE MARY RIGONI,

    Plaintiff,

v.

ERRON MORTON,

    Defendant.

_____/

Case No. 23-11482
Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff Corinne Rigoni filed this civil rights lawsuit against Michigan State Police ("MSP") Officer Erron Morton pursuant to 42 U.S.C. § 1983 and Michigan law. The Court dismissed Plaintiff's state law claims on July 17, 2023. (ECF No. 3.) Plaintiff's federal constitutional claims alleging unreasonable search and seizure, false arrest, malicious prosecution, and due process violations remain. Plaintiff maintains that Morton acted without probable cause.

Currently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 18.). For the reasons below, the Court finds that there are no factual disputes bearing on the reasonableness of Morton's conduct that preclude the entry of summary judgment. Accordingly, the Court GRANTS Defendants' motion.

**I.    Background**

This matter arises from a payment Plaintiff made for car repairs in January of 2019. Rigoni took her car to Mackey's Body Shop in Jackson County, Michigan. (ECF No. 1,

1

PageID.3.) When repairs were complete, she paid the body shop with a personal check drawn a TD Ameritrade account. (ECF No. 1, PageID.3; ECF No. 18, PageID.94.) Dissatisfied with the repairs and the service she received, Rigoni stopped payment on the check. (ECF No. 1, PageID.4; ECF No. 18, PageID.94.) In February of 2019, the body shop's bank, BlueOx Credit Union, sent a letter notifying them that Rigoni's check was drawn on a closed account. (ECF No. 18, PageID.94). Mackey's contacted the Michigan State Police, and Defendant Morton responded to take the police report. (ECF No. 1, PageID.4; ECF No. 18, PageID.94.) Morton's initial report included the bank's letter as an external document: "Closed account check message from BlueOx Credit Union to Alan Mackey." (ECF No. 18, PageID.95; ECF No. 18-2, PageID.124.) In Michigan, writing a check on a closed account is a felony. Mich. Comp. Laws § 750.131a (1985).

On April 19, 2019, Trooper Morton visited BlueOx Credit Union. (ECF No. 18, PageID.95.) He spoke with the manager, who confirmed that the "check was returned for closed account" and provided a letter for documentation. (*Id. See also* ECF No. 18-3, PageID.178.) Morton added this letter to his first supplemental report. (ECF No. 18-3, PageID.178.) He also noted that the report would remain open "pending contact with suspect's bank and suspect interview." *Id.*

On June 26, 2019, Morton visited Rigoni's home to speak with her, but she was out of town. (ECF No. 18, PageID.95.) He reached her by phone and scheduled a meeting in August. *Id.* Morton added this information in a second supplemental report. (*Id. See also* ECF No. 18-4, PageID.196.) On August 7, 2019, Morton interviewed Rigoni for approximately fifty minutes and recorded the exchange. (ECF No. 1, PageID.6; ECF No. 18, PageID.95.) At that time, Rigoni told Morton that her account was open at the time

2

she wrote the check, but that she had stopped payment on it. (ECF No. 18-8, PageID.260.) She provided bank statements and a letter from TD Ameritrade to support her claim. (ECF No. 1, PageID.6; ECF No. 18-3, PageID.148.) She also signed a release enabling Morton to confirm her account with her bank. *Id.* The video recorded Rigoni explaining the documents and handing them to Morton. (ECF No. 18-6, PageID.224.) After the interview, Morton marked the documents Rigoni provided with the appropriate case number and filed them with other materials on the matter in the locked master file at the Jackson MSP post, per standard procedures. (ECF No. 18-6, PageID.229–30; ECF No. 18, PageID.102.)

Morton did not immediately file an additional supplemental report on the interview. Supervisors added monthly notes to his second supplemental report journal, from August 2019 to March 2020, directing Morton to get the information from the suspect interview typed and submitted, and to "confirm new information." (ECF No. 18-4, PageID.196.) Morton explained the delay in his deposition, stating that he was busy at the time and in a rush when he did finally complete the third supplemental report. (ECF No. 18-6, PageID.222; ECF No. 18-6, PageID.229.) "I was having trouble with my caseload and there was other priority cases and I believe at the time I was working nights. So depending where I was at, I mean, I got sent to a call, various things." (ECF No. 18-6, PageID.222.)

On April 5, 2020, Morton submitted his third supplemental report documenting Rigoni's interview. (ECF No. 18-4, PageID.197–8.) In the report, Morton wrote the following: "Ms. Rigoni claimed she had been a customer of TD-Ameritrade for the past 10-years. Ms. Rigoni explained she adds money to her TD-Ameritrade account by using direct deposit or transferring money online. Ms. Rigoni admitted the check in question

3

was her check." (ECF No. 18-4, PageID. 197.) Morton did not add that Rigoni had provided documents to support her claim in his report notes. (ECF No. 18, PageID.99.) Morton also failed to list the documents she gave him as attachments to the file. (ECF No. 18-6, PageID.221.) An electronic file of the interview video was included with the report, and Morton directed the reader to "reference the Suspect Interview Video DVD for details." (ECF No. 18, PageID.99.) The Jackson County Prosecutor's Office confirmed that video interviews are generally accessible to his office and that a CD was part of Morton's file. (ECF No. 18, PageID.102–3; ECF No. 18-8, PageID.263.) Morton never contacted Rigoni's bank to confirm her statements or to verify the account documents she gave him. This third supplemental report noted that Morton would submit a warrant request to the Prosecutor's Office based on the information in the case. (ECF No. 18-4, PageID.198.)

When Morton prepared the warrant request, he did not reference the documents Rigoni gave to him in April 2019 or attach them when submitting the report to obtain the warrant. (ECF No. 18, PageID.99; ECF No. 18, PageID.102.) Morton states that because he "forgot to include the description and external documents headings" in the interview report, he did not have that list to check off when assembling documents for the warrant packet, and because it had been so long, he did not otherwise remember to check for them. (ECF No. 18-6, PageID.221, 223.) No supervisor and no one from the Prosecutor's Office followed up with Morton on his warrant request, reports, or to ask about the documents, the video, or the matter generally. (ECF No. 18, PageID.99.)

On May 7, 2020, Trooper James Wojton swore to the arrest warrant authorization request for Rigoni, which was approved. (ECF No. 18, PageID.96.) On June 23, 2020,

4

Morton arrested Rigoni at her home around 2:30am and transported her to the Jackson County jail. (ECF No. 1, PageID.5; ECF No. 18, PageID.96; ECF No. 18-4, PageID.200.) She was detained for approximately 12 hours prior to her release on her own recognizance. *Id.*

On July 9, 2020, Rigoni attended a probable cause conference with her defense attorney, who submitted copies of the documents Rigoni had previously given to Morton on her behalf. (*See* ECF Nos. 20-12, PageID.1235; 18, PageID.107.) On July 12, 2020, the Jackson County Prosecutor's office emailed Morton directing him to obtain a search warrant for Rigoni's bank and to resubmit the file with the account information. (ECF No. 18, PageID.96–7; report at ECF No. 18-4, PageID.201.)

Again, Morton delayed, and his supervisors made monthly notes in the supplemental report journal directing him to obtain Rigoni's bank search warrant and verify the information. (ECF No. 18-4, PageID.201–3.) On December 16, 2020, Morton contacted TD Ameritrade to speak with its legal department. (ECF No. 18, PageID.97.) On August 19, 2021, Morton reviewed the warrant again and e-mailed it to the post court officer to obtain judicial review. (ECF No. 18, PageID.97.) On January 10, 2022, the court signed the warrant for Rigoni's bank records. (ECF No. 18, PageID.97.) In February, MSP obtained a warrant, and on February 24, 2022, TD Ameritrade confirmed Rigoni's account was open at the time she wrote the check to the body shop and that she had initiated a stop payment on it. (ECF No. 1, PageID.6; ECF No. 18, PageID.97.) Morton resubmitted the file with the bank confirmation to the Prosecutor's Office on March 16, 2022. (ECF No. 18-4, PageID.205.) On May 3, 2022, the Jackson County Prosecutor's Office dismissed the felony charge against Rigoni.

When Rigoni initiated her lawsuit against Morton, MSP began its own internal investigation into the matter. (I ECF No. 20-18, PageID.1369.) MSP's Professional Standard Section ("PSS") recommended work rule violations for individual deportment, shirking responsibility, and respect for authority, but they "found no evidence of intent or guilty mind, including no evidence that Morton fabricated any evidence." (ECF No. 18, PageID.101; ECF No. 18-7, PageID.240.) PSS review would have required a criminal investigation if one were deemed necessary. *Id.* The investigation found that Morton made no material omissions with the intent to mislead the prosecutor or the court. (ECF No. 18, PageID.102.) His supervisors concluded that "[t]his appears to be performance-related and simply is the result of him doing insufficient work, having done an insufficient job." (ECF No. 18-7, PageID.242.) The Prosecutor's office also found no reason to think Morton fabricated evidence or intentionally withheld evidence for any reason, and they, too, would have had a professional obligation to report such activity if they thought he had. (ECF No. 18, PageID.103.)

## II.     Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could

6


return a verdict for the nonmoving party." *Id.* When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Qualified Immunity

In his motion for summary judgment, Morton invokes qualified immunity as a defense to Plaintiff's claims. (ECF No. 18, PageID.104–5.) "Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). Where qualified immunity is asserted, the issue of probable cause is one for the court since "the entitlement is immunity from suit rather than a mere defense to liability." Only where the evidence creates a genuine issue of material fact should the matter proceed to trial. *Hunter v. Bryant,* 502 U.S. 224, 227–28 (1991) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 511 (1985); *see also Burda Bros., Inc. v. Walsh,* 22 Fed.Appx. 423, 432 n.8 (6th Cir. 2001) (holding that "the issue is one for the jury only when the evidence creates a genuine issue of material fact for trial."). Here, viewing the facts in the light most favorable to the plaintiff, the Court finds there is no dispute of material fact as to the events leading up to Rigoni's arrest.

When a defendant asserts qualified immunity, "Plaintiff bears the burden of showing that [the] defendant[ ] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). To overcome Morton's claim of qualified immunity on summary judgment, Plaintiff must show that the facts, considered in the light most favorable to her, would

allow a reasonable jury to find that: "(1) the defendant violated a constitutional right; and (2) the right was clearly established." *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020). Though these two prongs need not be considered sequentially, the Court will first examine whether Plaintiff has presented evidence of a constitutional violation for each of her claims. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

B.     **Counts III, IV, and V**

Plaintiff brings constitutional claims of unreasonable search and seizure, false arrest, and malicious prosecution. (*See* ECF No. 1, PageIDs.12, 14, and 15.) Each of these claims require Plaintiff to show that Defendant lacked probable cause. *See, e.g.*, *Newman v. Twp. of Hamburg*, 773 F.3d 769, 771–72 (6th Cir. 2014) ("The Fourth Amendment conditions warrants on probable cause and prohibits unreasonable seizures."); *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) ("To state a Fourth Amendment false arrest claim, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff."); *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) ("A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.") (internal quotations omitted). That is, if probable cause for Plaintiff's arrest and prosecution existed, these claims are precluded. *Watson v. City of Marysville,* 518 Fed.Appx. 390, 392 (6th Cir.2013).[1]

---

[1] Malicious prosecution requires a plaintiff to show that there was a lack of probable cause for the criminal prosecution. *Sykes v. Anderson,* 625 F.3d 294, 308–09 (6th Cir.2010). The analysis is distinct from the probable cause inquiry in unreasonable search and seizure and false arrest claims because the tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal

Plaintiff's only argument is that Morton intentionally and/or recklessly omitted material exculpatory evidence from Plaintiff's file to justify her detention, arrest, and prosecution without probable cause. (ECF No. 1, PageIDs.12, 14–15.) Rigoni argues that, because Morton knew the bank documents he failed to submit with the warrant request contained information that a judge or magistrate would want to know when determining probable cause, that the omission was intentional, or, at the very least, reckless and therefore unlawful. (ECF No. 20, PageID.293.) Defendant acknowledges his mistakes but argues that negligence is not enough to overcome qualified immunity. (ECF No. 18, PageID.114.)

The Sixth Circuit has provided specific guidance when omissions in a warrant application become a constitutional violation. *See Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019) (discussing *Vakilian v. Shaw*, 335 F.3d 509, 517–19 (6th Cir. 2003)); *see also Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). First, a plaintiff must present "substantial" evidence proving that the testifying officer did more than negligently include a false statement or make a material omission. *Vakilian*, 335 F.3d at 517. Police officers commit a constitutional violation when they exclude critical information *with the intention of misleading the court*. *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis added); *see also Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005). When a claim hinges on alleged omissions, moreover, "[t]he mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing." *Hale*, 396 F.3d at 727.

---

process." *Wallace v. Kato,* 549 U.S. 384, 390 (2007) (internal quotation marks omitted). In this case, however, plaintiff bases probable cause for her malicious prosecution claim on the same facts as her unreasonable search and seizure and false arrest claims. (ECF No. 20, PageID.296.) Therefore, the Court applies the same analysis for each of these claims.

Next, the plaintiff must show "that the allegedly false or omitted information was material to the finding of probable cause," meaning "that the judge would not have issued the warrant without the allegedly false material." *Vakilian*, 335 F.3d at 517; *Bullock v. City of Detroit*, 814 F. App'x 945, 951 (6th Cir. 2020).

The key shortcoming with Rigoni's evidence is that it tells the Court nothing about Morton's mental state, which is critical to the qualified immunity inquiry. Morton's work was shoddy and his investigation incomplete, but the Sixth Circuit has never found that such mistakes by law enforcement officers violate a plaintiff's constitutional rights. Police officers sometimes make mistakes, but only "deliberate falsehood ... or reckless disregard for the truth" should make an officer ineligible for qualified immunity. *Vakilian*, 335 F.3d at 517. This gives an officer "breathing room" to do her job. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). To overcome this immunity, a plaintiff must present "substantial" evidence to show a more culpable mental state. *Butler*, 936 F.3d at 418.

Plaintiff cites several cases where a police officer omitted exculpatory evidence and a court found the officer lacked probable cause. These cases, however, are all distinguishable because additional facts established the requisite mental state. For example, in *Wesley v. Campbell*, a law enforcement officer *intentionally* decided to withhold evidence of a child victim's unreliability, basing probable cause on the child's allegations alone despite the well-known need to corroborate such allegations. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). In addition to these omissions, law enforcement failed to conduct interviews to support probable cause. *Id.* Plaintiff compares this to Morton's failure to confirm Rigoni's bank confirmation. (ECF No. 20, PageID.294.)

Plaintiff, however, fails to establish the same required mental state. No facts suggest that Morton intentionally withheld evidence.

Plaintiff also cites *Peet v. City of Detroit*. 502 F.3d 557 (6th Cir. 2007). In that case, "the report contained false and grossly misleading statements" in addition to the omission of important exculpatory information. *Id.* at 572. Omissions are more likely to be considered substantial when there is also evidence of misrepresentations. *Id. See also United States v. Martin,* 920 F.2d 393, 398 (6th Cir.1990) (finding that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information). The record includes no evidence, and Rigoni makes no argument, that Morton intentionally included false information in the warrant affidavit. *See also McCallum v. Geelhood*, 742 F. App'x 985, 991–93 (6th Cir. 2018) (finding that evidence showing that an officer had not spoken to an informant as the officer's affidavit stated, combined with the officer's admission that she had drafted the affidavit to give the false appearance of having spoken to the informant, was substantial evidence of at least reckless disregard for the truth."); *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (finding that omissions were material, but the evidence of omissions was accompanied by more evidence of false statements and intentional misrepresentations); *Zavatson v. Warren*, 714 Fed. App'x. 512 (6th Cir. 2017) and *Wyniemko v. Ostin*, No. 03-CV-74749-DT, 2005 WL 8169287, at *22 (E.D. Mich. Mar. 3, 2005) (both finding same). The facts in the present matter are also distinguishable from any case where the exculpatory evidence was only known to law enforcement; it is undisputed that Rigoni always had copies of the documents she had given to Morton. (ECF No. 18, PageID.107.) Morton could not

11

intentionally hope to mislead through his omissions when Plaintiff always possessed the information he failed to submit.

Morton repeatedly admits that he knew the documents were potentially exculpatory and that he should have submitted them; this is not in dispute. (ECF No. 20-5, PageID.609–14.) There is no evidence to suggest that Morton acted with the intent to mislead. There is, however, ample evidence of negligence and mistakes. The record includes repeated reprimands and notes from supervisors directing Morton to get things filed. Morton admits to being overwhelmed by his caseload. Because there is no evidence that Morton intentionally omitted the documents, it was also reasonable for him to rely on the warrant. He had a letter from the body shop's credit union stating that Rigoni's TD Ameritrade check was written on a closed account, and he had unverified bank documents from Rigoni saying the opposite, which Morton claims, and no evidence suggests otherwise, that he did not know were misfiled until after Rigoni sued. Plaintiff argues that Morton knew Rigoni did not commit a crime and that he knew he did not have probable cause, but she bases this on an incomplete quote from the record. Plaintiff cites this exchange:

Q: In that moment did you believe that Ms. Rigoni had committed a crime?

MORTON: No.

(ECF No. 20, PageID.292.)

But in the same answer, Morton goes on to say:

> … I mean, I, I mean, she said that she, you know, stopped payment so I mean that's what she said, but then again his bank, you know, sent a letter, I got a letter directly from his bank saying no, this is, this is what it said when we tried to process the check, so.

Q: Okay.

> MORTON: I submit it so that the prosecutor would be able to make the decision or review it.

(ECF No. 20-13, PageID.1297.)

"Negligence will not ground a section 1983 action." *Ritchie v. Wickstrom*, 938 F.2d 689, 692 (6th Cir. 1991) citing *Daniels v. Williams,* 474 U.S. 327, 106 (1986). The Sixth Circuit has held that a police officer can only be held liable for requesting a warrant which allegedly led to a false arrest if he stated a deliberate falsehood or acted with a reckless disregard for the truth; "[p]roof of negligence or innocent mistake is insufficient." *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993). *See also Ahlers v. Schebil*, 188 F.3d 365, 373–74 (6th Cir. 1999) (finding law enforcement officers were entitled to qualified immunity where they failed to gather evidence, failed to interview witnesses at the scene, failed to view the scene, and failed to reconstruct the alleged event because an investigation's lack of thoroughness might be negligent but it does not demonstrate knowing or intentional behavior designed to violate a plaintiff's constitutional rights); *Newman*, 773 F.3d at 772 (holding that a showing of "negligence or perhaps a lack of attention to detail … does not amount to malicious prosecution.").

For these reasons, the Court finds that Plaintiff has failed to show that Morton is not entitled to qualified immunity on claims III, IV, and V because she has not presented substantial evidence proving that Morton's omissions were more than negligent.

### C.    Due Process Claims

In Counts I and II, Plaintiff alleges that Morton "intentionally, deliberately, and/or recklessly failed to disclose exculpatory and/or favorable evidence in his possession to the prosecutor" in violation of her constitutional due process rights. (ECF No. 1,

PageIDs.7–10.) Defendant argues he is entitled to summary judgment on this claim for a number of reasons. Plaintiff does not, however, address any of those arguments in her response to Defendant's motion and, thus, this claim is deemed abandoned. *Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment). Courts may grant summary judgment on this basis alone. *Kolesar v. Allstate Ins. Co.*, 814 F. App'x 988, 991 (6th Cir. 2020). These claims also center on matters of pretrial detention, and the Fourth Amendment, not the Due Process Clause, "governs a claim for unlawful pretrial detention." *Manuel v. City of Joliet*, 580 U.S. 357, 369 (2017). Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citations omitted). Plaintiff raises claims regarding her Fourth Amendment rights in Counts III, IV, and V, which the Court has addressed.

**IV.    Conclusion**

For the reasons above, the Court GRANTS Defendant's motion for summary judgment on all counts.

SO ORDERED.

                                                s/ Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: March 19, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2025, by electronic and/or ordinary mail.

                        s/ Marlena Williams
                        Case Manager